CASE 22.—PROCEEDINGS FOR THE PROBATION OF THE WILL OF JOHN GARNETT, DECEASED.—March 2.

### Garnett v. Foston, &c.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment probating the will in the county court. Affirmed.

1. Wills—Probate—Appeal—Bond—Necessity for Bond—Civil Code Prac., section 724, in relation to county courts, requires an appellant therefrom to give a bond conditioned to satisfy any judgment rendered. Section 700 provides that the provisions of the Code shall regulate the proceedings in civil actions in county courts, etc., except as otherwise provided. Held, That though the statute in relation to an appeal from the county to the circuit court in proceedings for probating or rejecting a will does not dispense with a bond, the practice in such proceedings being radically different from the general practice, as shown by Ky. Stats., 1903, sections 4850, 4851, 4855, and Civil Code Prac., section 724, a bond is not necessary on an appeal from the county to the circuit court in proceedings probating or rejecting a will.

2. Same—Execution—Signature of Testator—Sufficiency—The statute provides that no will shall be valid unless the name of testator be subscribed thereto by himself, or by some other person in his presence and by his direction, and requires the subscription to be made or the will acknowledged in the presence of two witnesses. Held, That where a will, including testator's name was not written in his presence, but it was then read over to him, and, being unable to write, he

made his mark in the presence of two witnesses, the execution was sufficient.

WILFRED CARRICO and LITTLE & SLACK for appellants.

QUESTIONS PRESENTED AND AUTHORITIES CITED.

1. There can now be no appeal from county to circuit court in will cases, without the execution of an appeal bond. (Title XVI., Code of Practice; sections 700 and 724, Code of Practice; Jones v. Jones, 3 Met., 268; sections 20 and 22, Code of 1867.)

2. "No will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction." (Ky. Stats., section 4828; Soward v. Soward, 1 'Duv., 126; Wineland's Appeal, 4 Am. St. Rep,, 571; Lacey v. Dodds, 55 L. R. A., 581; Notes to Ree Guilfoyle, 22 L. R. A., 371; McGee v. Porter, 55 Am. Dec., 129; Greenough v. Greenough, 51 Am. Dec., 567; Savage v. Bulger, 25 Ky. Rep., 765; Word v. Whipps, 16 Ky. Rep., 403.)

C. W. WELLS for appellees.

CLASSIFICATION AND AUTHORITIES.

1. No appeal bond is required upon taking an appeal to the circuit court from an order of the county court probating or rejecting a will. Section 724 of the Ky. Civil Code has no application to such an appeal. (Ky. Civil Code of Prac., sections 700 and 731; Ky .Stats., sections 3901, 3902, 4850, 4851; King v. Rose, 100 Ky., 393; 18 R., 862; 38 S. W., 844; Jones v. Jones, 3 Met., 266; Murphy v. Murphy, 23 Ky. Law Rep., 1460; 65 S. W., 165; Couchman v. Lilsle, 15 Ky. Law Rep., 543.)

2. Where a will is signed by the making of a mark, the mark and not the name written near it, is the real signature. (Page on Wills, section 173, and authorities there cited; same, section 179, and authorities there cited; Mann v. Balfour (Mo.), 86 S. W., 103; Main v. Ryder, 84 Pa., 217; 22 L. R. A., p. 300, note; Sheehan v. Kearney (Miss.), 35 L. R. A., 102; Staples v. Bedford, 98 Ky., 451; 33 S. W., 403; 2 Bl. Com., 302; Maupin v. Bachley, 3 Ky. Law Rep., 617; Meazels v. Martin, 93 Ky., 50; 18 S. W., 1028; Ky. Civil Code, section 732, sub-section 7; In re Guilfoyle, 96 Cal., 598; 22 L. R. A., 370, note; Lewis v. Watson (Ala.), 22 L. R. A., 297, note; ex-parte Lenard (S. C.), 22 L. R. A., 302.)

3. The name previously written at the foot of a will by another

person and not in the presence of the testator, may be after-
wards adopted by the testator, as his signature, by his acknowl-
edgement in the presence of witnesses as required by the statute.
(Ex-parte Lenard (S. C.), 22 L. R. A., 302; Secrest v. Edwards, 4
Met., 163; Shanks v. Christopher, 3 Marsh., 144; Upchurch v.
Upchurch, 16 B. Mon., 111; Cochran's Will Case, 3 Bibb., 491;
Sarah Miles' Will Case, 4 Dana, 1; Mann v. Balfour (Mo.), 86
S. W., 103; Lewis v. Watson (Ala.), 22 L. R. A., 297; other cases
above cited.)

4. Whatever the testator is shown to have intended as his
signature is a valid signing.   (Sheehan v. Kearney (Miss.), 35
R. A., 102; Sarah Miles' Will Case, 4 Dana, 1; other cases above
cited.)

5. A substantial, rather than a literal compliance, with the
statutory provisions with reference to the execution of wills, is
required.   (Savage v. Bulger, 25 Ky. Law Rep., 763; 76 S. W.; 361;
Soward v. Soward, 1 Duv., 126; Porter v. Ford, 82 Ky., 191; Up-
church v. Upchurch, 16 B. Mon., 102; Flood v. Pragoff, 79 Ky.,
607; others cases above cited.)

OPINION BY JUDGE O'REAR.—Affirming.

A paper purporting to be the last will and testa-
ment of John Garnett, deceased, was tried for probate
in the Daviess Circuit Court, where, upon a trial
before a jury, the paper was found to be the will of
John Garnett and ordered to probate.

This appeal involves two questions of law.   The
first is, is it necessary, in prosecuting an appeal from
a county court to a circuit court, probating or reject-
ing a will, that the appellant should execute an appeal
bond in the circuit court as an antecedent step in
taking the appeal?   Title 16, Civil Code of Practice,
is devoted to practice in quarterly courts, and police,
county, and justice's courts.   Section 724 reads:
"Appeals may be taken in the following manner: The
party appealing shall produce to the clerk of the
court, to which the appeal is taken, a certified copy of
the judgment, and amount of costs, and cause to be

executed before him by one or more sureties to be
approved by him, a bond to the effect that the appel-
lant shall satisfy and perform the judgment that shall
be rendered upon the appeal,'' etc. It is contended
for appellant that this provision applies to all appeals
from county courts, and that, as no appeal bond was
executed in this case, the appeal should have been
dismissed on her motion by the circuit court. Section
700, Civil Code of Practice, provides that ''the pro-
visions of this Code shall regulate the proceedings in
civil actions in quarterly courts, county courts, police
courts, city courts, mayor's courts and courts of jus-
tices of the peace, except as is provided in this
chapter.'' Chapter 16.

It is hard to reconcile the language of section 724
with any other practice, as there is none other relative
to this subject found in the Code. There are, however,
many instances of practice in the county courts,
allowed by statute, that the provisions of the Code
cannot and do not apply to. For example, an applica-
tion to open a road, to grant a tavern license, to
remove or appoint an administrator or guardian, to
surcharge the settlement of such, a bastardy proceed-
ing, forcible entry and detainer, to list omitted prop-
erty from taxation, to review assessments illegally
made, and the like. To all of these proceedings many
of the provisions of the Code do apply. But in every
instance a special practice, in some particular, is
provided by statute other than the Code, peculiar to
the particular subject, and which is not treated of at
all in the Code. Where the Legislature has been to
so much pains, and in so many instances, to provide
by statute regulating a given subject for a practice
peculiarly suited to it, it cannot be supposed that it

intended, when the Code was adopted, to repeal all such provisions, or, on the other hand, when a later statute was adopted, to repeal the Code provisions as to that matter. On the contrary, we must assume from the nature of the matter, that it was intended to apply the Code to all practice to which it was applicable, in whatever court; but where special jurisdiction was conferred upon an inferior court, and a particular practice required by the statute as to it, it was not intended to apply also Code provisions that had no logical place in such proceeding. Trials in inferior courts, where appeals can be prosecuted from them, are inconclusive if an appeal is taken. They are tried in the appellate tribunal, generally, as if no previous trial had taken place. But the prosecution of the appeal results in a suspension of the judgment appealed from, as by supersedeas. This is not so of appeals in will cases. Though on the appeal to the circuit court a trial is had as if no trial had occurred in the county court, the appeal does not suspend the judgment of the county court. King's Admr. v. Rose, 100 Ky., 393; 18 Ky. Law Rep., 862; 38 S. W., 844. It will need little argument to show that, where a judgment is suspended by appellant, he should engage, as a condition, to perform such judgment as might be rendered on the appeal.

We will allude to some of the characteristics of an appeal from the county court to the circuit court in a will case, showing the difference between such proceding, and an appeal from a judgment for money, in the county court, under the Code. The Civil Code requires appeals from these inferior courts to be prosecuted within 60 days from rendition. Section 4850, Ky. Stats., 1903, allows an appeal in a will case

to be prosecuted to the circuit court within five years. The Code gives the concluding argument to the party having the burden of the proof. The statute in the will case gives the concluding argument to the propounder of the will, without regard to who has the burden of proof in the case. In a will contest provision is made for taking depositions (section 4855) that are inapplicable in other cases under the Code. No person can appeal from a judgment under the Code who was not a party to the action or proceeding. Any party in interest, whether or not a party in the county court, can prosecute an appeal from a judgment of the county court probating or rejecting a will. By section 724, Civil Code of Practice, upon the filing with the clerk of the circuit court of the copy of the judgment of the inferior court and the execution of the bond required by that section, "whereupon the clerk shall issue an order to the judge, mayor, or justice, rendering the judgment, to stay proceedings thereon, and to transmit to the office of said clerk all the original papers in the case." Section 4851, Ky. Stats., 1903, regulating stay of proceedings upon appeal in a will case reads: "An appeal to the circuit court from an order of a county court, admitting a will to record, or the rejection of it, shall not prevent the appointment of an administrator or executor by the proper court, and the settlement, distribution and division of the decedent's estate, unless proceedings are commenced in the proper circuit court within 12 months from the entering of the order admitting the will to record or rejecting it by the county court: Provided, the circuit court in which proceedings may be thereafter pending on appeal may make an order restraining the further distribution and division of the estate."

Enough has been said to show that the Legislature, in providing appeals from county to circuit courts in will cases, has laid down a materially different procedure from that provided in other cases generally, and for obviously different reasons. We conclude that it was intended that the statutory provisions regulating such appeals (in will cases) were intended to be in lieu of the Code provision regulating appeals generally from county to circuit courts, and that therefore, as bond is not required by the statute (unless the circuit court should order one to be executed where a stay in the county court was asked under section 4851, Ky. Stats.,1903), it is not necessary to execute such bond in order to prosecute the appeal. Before the adoption of the present Code in 1877, the old Code (Myers' Code, c. 10, section 519) regulated the practice in will cases. The present Code does not treat of the subject specifically. Under the Revised Statutes in force contemporaneously with Myers' Code, there were additional provisions regulating the practice in will cases. The time of prosecuting an appeal to the circuit court was fixed differently in the general provision on appeals in the Code and in the statute concerning wills. This court, in Arterburn's Ex'rs v. Young, 14 Bush, 509, held that the chapter in Myers' Code on wills, and the chapter in the Revised Statutes on wills, contained a complete law on the subject. The general provision of the Code, inconsistent with the statute on wills, was held not to apply to the practice in will cases. Such seems, also, to have been the view adopted in Jones v. Jones, 3 Metc. (Ky.) 266.

The remaining question is as to the sufficiency of the signature of the testator. The will was written

wholly by another, not in testator's presence, including testator's name, which was subscribed to the will thus: "John Garnett." The will was read over to testator (who had previously directed the draftsman as to its provisions), and, upon his signifying his satisfaction with its form, was presented for his signature. He could not write, a fact known to the draftsman. His signature was then executed by his making his mark, a cross, between the words "John" and "Garnett," and the draftsman writing above the cross the word "his' and below it the word "mark," all done in the testator's presence, and in the presence of subscribing witnesses, so that the signature then read:

his
"John X Garnett."
mark

The statute on this subject reads as follows: "No will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

It is contended that the testator's name, "John Garnett," must have been written in his presence before the will can be valid as a testamentary document. The statute of 1797 (1 Litt. Laws, p. 611, c. 293, section 1) provided that a devise of land should be valid only if "such last will and testament be signed by such testator or testatrix, or by some other person in his or her presence, and by his or her

direction; and moreover, if not wholly written by himself or herself, be attested by two or more competent witnesses, subscribing their names in his or her presence.'' Under this last named statute it was held in the case of Cochran's Will, 3 Bibb, 491, that the testator's name, signed by another person, when subsequently acknowledged by the testator to be his will, and thereupon attested by the subscribing witnesses in his presence, was a substantial compliance with the law. In Shanks v. Christopher, 3 A. K. Marsh. 144, the name of the testator was signed to the instrument, with the mark of a cross between the christian and surname. The testator could neither write nor read writing. He acknowledged the execution of the paper in the presence of the subscribing witnesses, who thereupon affixed their signatures in his presence. The court thought that, as the statute did not require the testator to sign in the presence of the subscribing witnesses, other evidence than that of the subscribing witnesses having seen the instrument signed by the testator was admissible, ''and,'' the court observed, ''we imagine none more competent nor more satisfactory than the acknowledgement by the testator of the will with his signature annexed.'' In Pate's Adm's v. Joe, 3 J. J. Marsh. 113, Thomas Pate's will was admitted to probate. His name was signed, not by himself. The subscribing witness, who had signed the testator's name and his own, was dead. The other subscribing witness did not see the testator sign, nor hear him authorize the signing of the document. Yet he proved his own attesting signature, and gave such further evidence that the court found from it an acknowledgment by Pate of his signature. It was held sufficient publication of the will.

By section 5, c. 106, Revised Statutes, the law was changed into its present form (section 4828, Ky. Stats. 1903). Upchurch's will, made in 1853 (16 B. Mon. 102), was written by another, and the testator's name also signed by the draftsman. Whether in testator's presence does not appear. Afterwards testator acknowledged it in the presence of witnesses, who then attested it in his presence. The court said: "The section referred to is a substantial re-enactment of the act of 1797. Its requisitions being similar in import and substance, if not so in phraseology, there is not much difficulty in determining that the acknowledgment of a will by the testator, in the presence of the witnesses, though written and his name subscribed by another at another time, was a sufficient publication." It is not essential to the validity of a will, and never was in this State, that the testator should personally have signed it. It is enough if he authorizes another to sign his name and that it is done in his presence. In Sechrest v. Edwards, 4, Metc. 163, decided after the adoption of the Revised Statutes, and concerning a will made after the Revised Statutes became effective, it appears that Sechrest, the testator, could not write. His will was written by another, and his name signed thereto. By whom or when is not shown. But the testator made his mark after one of the attesting witnesses signed, but in the presence of the two. The court, in the course of the opinion, gives these facts and this conclusion: "So that Sechrest's name must have been subscribed to the paper before he saw it; and, after his name had been subscribed to the paper, he acknowledged it to be his will, which was a compliance with the requisition of the statute, and the placing

the mark to it, whether by Sechrest or Carter, was wholly unnecessary.'' It was also declared in that case that the provisions of the Revised Statutes and of the statute of 1797, quoted above in this opinion, were the same in import and substance.

We get very little aid in this case from decisions defining a signing of a paper. A mere signature may be by a mark or other symbol by which the act of affixing the name is solemnized. Here the requirement is that the testator's name must be subscribed by himself or another in his presence and by his direction. A literal compliance would seem to require that, unless the name—not the signature necessarily —is affixed in the presence of the testator, the paper would be invalid. But the course has never been to demand literal compliance with such provision. On the contrary, the rule in this State has always been that a substantial compliance will satisfy the statute. Soward v. Soward, 1 Duv. 126; Porter v. Ford, 82 Ky., 191; 6 Ky. Law Rep., 60; Mile's Will, 4 Dana, 1; Upchurch v. Upchurch, supra; Flood v. Pragoff, 79 Ky., 607; 3 Ky. Law Rep., 372. The act in this case was a full acknowledgment of the document and adoption of the subscription of his name by the testator in the most solemn form possible. By adding his mark, he affixed his own signature to it, a work of supererogation it may be, but efficacious at least to adopt as his the act of another in attaching his name to the document. The signature of the name as it finally appeared became, in part at least, his own act. It would have been an idle thing to have had his name erased and again signed, by the same person, perhaps, or at least for the same purpose. His acknowledgment of it in the presence of the requisite wit-

nesses serves every purpose of the statute. Upon authority and principle, we conclude that the statute has been substantially complied with, and that the publication of the will was sufficiently established.

The rulings of the circuit court having been in accord herewith, the judgment sustaining the will is affirmed.